RECEIVED
SEP 30 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ROBERT C. JONES III | CIVIL ACTION NO. 1:11-cv-01359 |
| -vs- | JUDGE DRELL |
| BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA SYSTEM, ET AL | MAGISTRATE JUDGE KIRK |

### R U L I N G

Pending before the Court is a Motion to Dismiss and Motion for Summary Judgment (Doc. 54) filed by the Defendants and a Motion for Partial Summary Judgment (Doc. 55) filed by the Plaintiff. For the following reasons, Defendants' motion will be **GRANTED** and Plaintiff's motion will be **DENIED**.

I.   Background

Plaintiff, Robert C. Jones, III, was employed by Northwestern State University ("NSU") within the University of Louisiana System ("ULS"). He was hired as an instructor in 1994 to teach in the College of Business, and, in 2000, he was promoted to assistant professor and granted tenure. Sometime prior to 2010, NSU was faced with significant budget cuts that required University administrators to initiate a process of reducing expenditures. This included consolidation of colleges and schools, discontinuation of academic programs, and layoffs. At all relevant times in this matter, Defendant Randall Webb was the President of NSU, and Defendant Lisa Abney was the Provost and Vice President for Academic Affairs. NSU, as well as the

other ULS institutions, was managed by the Board of Supervisors of the University of Louisiana. In June or July of 2010, during the course of budget reductions and layoffs, Jones was notified that his position as a tenured associate professor was being terminated effective July 31, 2011.[1]

Jones filed this suit on July 22, 2011 asserting three causes of action: (1) discharge in violation of federally protected due process rights; (2) violation of contractual rights under Louisiana law; and (3) tortious interference with plaintiff's contract rights against the State of Louisiana, the Board of Supervisors, and, in their individual capacities, Randall Webb, Lisa Abney, and each member of the president's cabinet (Doc. 1). On May 16, 2012, Jones amended his complaint to include a fourth cause of action: violation of the "Impairment of Contracts" clause of the United States Constitution (Doc. 15). On January 16, 2014, Jones again amended his complaint in order to name the individuals as defendants in their official capacities as well. On March 14, 2014, Jones dismissed all his claims against the individual members of the NSU president's cabinet (Doc. 60-1). The remaining defendants are: (1) the State of Louisiana; (2) the Board of Supervisors; (3) Randall Webb, in both his individual and official capacities; and (4) Lisa Abney, in both her individual and official capacities.

Defendants filed a Motion for Summary Judgment (Doc. 54). Plaintiff has opposed the motion (Doc. 60) to which Defendants have replied (Doc. 61). Plaintiff filed his own Motion for Partial Summary Judgment (Doc 55), which Defendants have

---

[1] Both parties agree that Jones was notified at least as early as July 22, 2010, when he received his termination letter from Provost Lisa Abney. Jones was informed on June 18, 2010, during a meeting with President Randall Webb in Webb's office, that the economics concentration was being discontinued. However, Jones disputes the defendants' contention that he was also informed orally that his position as a tenured faculty member was being terminated as well.

opposed (Doc. 59). After considering the evidence and the pleadings, the Court rules as follows:

II. <u>Law and Analysis</u>

    A. Motion for Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party, who must "'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>quoting</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." <u>Trevino v. Celanese Corp.</u>, 701 F.2d 397, 407 (5th Cir. 1983). However, the non-moving party does not establish a genuine issue with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." <u>Little</u>, 37 F.3d at 1075 (citations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

    B. Sovereign Immunity under the Eleventh Amendment

Both the State of Louisiana and the Board of Supervisors of the University of Louisiana are entitled to immunity from this suit. "The Eleventh Amendment to the

United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department." Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 185–86 (5th Cir. 1986). The State of Louisiana has not waived its sovereign immunity. LA. CONST. art. XII, § 10; La. Rev. Stat. Ann. § 13:5106. Furthermore, the Board of Supervisors is an arm of the state and is likewise entitled to Eleventh Amendment immunity. Delahoussaye v. City of New Iberia, 937 F.2d 144, 148 (5th Cir. 1991). The Plaintiff is not barred by the Eleventh Amendment from bringing suit, as he has, for prospective, injunctive relief against individual state officials named as defendants in their official capacities. See Ex parte Young, 209 U.S. 123 (1908).

C.   Qualified Immunity for State Officials

Randall Webb and Lisa Abney are entitled to qualified immunity from suit in their individual capacities.[2] "Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Prison Legal News v. Livingston, 683 F.3d 201, 224 (5th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To defeat a defense of qualified immunity, the plaintiff must show "the officer violated a clearly established constitutional right [and that] the official's conduct was objectively unreasonable under established law." Linbrugger v. Abercia, 363 F.3d 537, 540 (5th Cir. 2004).

Qualified immunity, "even on summary judgment, 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who

---

[2] The plaintiff has voluntarily dismissed his claims against the other individuals.

knowingly violate the law.'" Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012). When a defendant has, in good faith, asserted a defense of qualified immunity, the burden shifts to the plaintiff to evidence a genuine dispute as to a material fact. Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992) ("The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.")

Here, Jones has failed to meet his burden and the Court finds, based on the evidence in the record, that Defendants Webb and Abney acted in an objectively reasonable manner. NSU was facing a severe budget crisis at least as early as the spring of 2010 when administrators were tasked with cutting more than $10 million from their budget (See Doc. 54-16). NSU officials took numerous steps to balance their budget, including discontinuing more than two dozen academic programs, combining and condensing colleges and departments, eliminating two dean positions, and shortening the work week to save on energy costs (See id.). President Webb followed a ULS-wide policy and procedure for discontinuing programs, established a Program Review Committee ("PRC") and tasked his cabinet with reviewing the recommendations of the PRC before making his request to the ULS president and Board of Supervisors. There were multiple levels of decision making and we find that under the circumstances Webb and Abney discharged their duties in an objectively reasonable manner.

D.   Due Process Claim

"No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Due Process is not a rigid and fixed

concept, but, rather, it is "flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). The level of process owed in a particular situation is determined by weighing the private interest, the state interest, and the risk of erroneous deprivation. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Where a tenured faculty member is terminated as a result of a program-elimination decision, the university need only provide "the barest procedural protections of notice and an opportunity to be heard." Texas Faculty Ass'n v. University of Texas at Dallas, 946 F.2d 379, 387 (5th Cir. 1991) (reasoning that there is little risk that program-elimination decisions will be made erroneously as university officials "generally are charged with acting in the best interests of the university").

Defendants Webb and Abney followed the ULS policy for program discontinuance (See Doc. 54-11) including forming a Program Review Committee, comprised of representatives from each NSU College as well as the NSU Faculty Senate, to identify programs for discontinuance based on "cost, efficiency, completion rates, semester credit hour production, tie to the University Core Curriculum, . . . enrollment [and] economic development and cultural significance to the region" (Doc. 54-28). Recommendations by the PRC were reviewed by President Webb's cabinet, which met on a regular basis to discuss the budget crisis, before Webb made an official request to the ULS president that the Board of Supervisors terminate the identified programs (Id.).

Webb and Abney notified affected faculty members and efforts were made to find alternative positions for those who were qualified to teach other subjects

according to the guidelines promulgated by the Southern Association of Colleges and Schools ("SACS") used at NSU.[3] Those who could not be moved were given twelve-months' notice that their employment would be terminated as a result of program discontinuance. Additionally, all affected faculty had the opportunity to appeal the decision to an NSU appeals committee. After review by the PRC, the President's Cabinet, President Webb, and the Board of Supervisors, the economics concentration, in which Jones was a tenured professor, was discontinued. President Webb personally informed the economics faculty members in a private meeting in his office on June 18, 2010 of the final decision.

Jones only had SACS accreditation to teach economics and could not be placed in another NSU program. Jones had multiple degrees, including a Ph.D., in economics and met the objective standards for accreditation established by SACS to teach courses in economics. However, Jones did not have degrees in any other field taught at NSU, nor did he have the SACS-required eighteen graduate hours in any other field. It is quite clear in the record that, despite Jones's contention he is qualified to teach (and has taught) courses in finance, Jones does not meet the current SACS requirements nor has he taught finance classes since SACS standards were updated in 2004 (See Docs. 54-32, 54-34, 55-13). Furthermore, it is evident from the record that Jones had the opportunity to plead his case to Provost Lisa Abney

---

[3] Professors are required to submit their official transcripts as part of the credential verification process and it is the policy of NSU that the Registrar's Office will not assign classes to any faculty member who has not completed the credentialing process. To be qualified under the SACS guidelines to teach within a particular discipline, a professor must possess either a doctoral or master's degree in the "teaching discipline" or a master's degree with a concentration, defined as "a minimum of 18 graduate hours," in the teaching discipline (Doc. 54-44).

and Associate Provost Steven Horton, both of whom reviewed his transcripts multiple times to find a way to credential him in another discipline (Doc. 55-13).

Jones filed a seven-page, single-spaced appeal, along with several pages of attached documents, to an NSU appeal committee asserting substantially the same arguments he makes in this suit (Doc. 55-13). The committee was comprised of seven faculty members from various colleges and schools within NSU, including the school of business (Doc. 59-7). The appeals committee met on November 5, 2010 to review Jones's appeal after which they voted unanimously to deny the appeal (Id.).

The Court finds that Jones was notified of the decision to discontinue the economics concentration and that his position was being terminated as a result. Jones participated in a meeting with President Webb and the economics faculty to discuss the discontinuation. Jones had several opportunities to plead his case regarding his qualifications and ability to teach subjects other than economics. Finally, Jones filed a seven-page appeal, which was reviewed by an appeals committee of NSU faculty members.  NSU provided Jones with at least the Constitutionally-required minimum process of notice and an opportunity to be heard. In fact, the evidence in the record suggests he was afforded more than that. However, beyond ensuring that Constitutional minimum, the Court is "reluctant to impose due process requirements on public colleges and universities when doing so might compromise the state's ability to administer them effectively." Texas Faculty, 946 F.2d at 375.

E.  State Law Breach of Contracts Claim

The Court concludes that Plaintiff's state law contracts claims should be dismissed. In discontinuing the economics concentration, NSU followed a long-standing decision-making policy that involved numerous levels of review as discussed above more fully. NSU properly terminated its employment contract with Jones and an appeals committee of seven faculty members voted unanimously to deny Jones's appeal, finding that none of his rights had been violated.

F.  Impairment of Contracts

For the same reasons discussed above, Plaintiff's claim that Defendants violated his rights under the Contracts Clause of the Constitution is completely without merit and will be dismissed.

G.  Tortious Interference with Contract

While Plaintiff's claim of tortious interference was not discussed in either of the cross motions for summary judgment, the Court finds that this claim is without evidentiary support or legal merit.

H.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff's Motion for Partial Summary Judgment raises, principally, the same issues as Defendants' motion. Thus, for the same reasons that Defendants' motion will be granted, Plaintiff's motion will be denied.

III.  Conclusion

For the foregoing reasons, we find Defendant has shown there is no genuine dispute as to any material fact concerning Plaintiff's claim of violation of his Due Process rights, and find Defendant is entitled to judgment as a matter of law.

Accordingly, Defendants' Motion for Summary Judgment will be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment will be **DENIED**. This suit will be **DISMISSED with PREJUDICE**.

SIGNED on this 30th day of September, 2014 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT